**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

QBE INSURANCE CORPORATION,     :

      Petitioner,     :

vs.     :     CA 09-0190-CG-C

DOLPHIN LINE, INC.,     :

      Respondent.

## REPORT AND RECOMMENDATION

      This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the complaint (Doc. 1), the motion to dismiss filed by defendant Dolphin Line, Inc. (Doc. 15), and the response filed by QBE Insurance Corporation (Doc. 19). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **DENY** the motion to dismiss.

## FINDINGS OF FACT

      1.      On April 7, 2009, QBE Insurance Corporation filed a complaint in this Court seeking a declaratory judgment that it owes no coverage to defendant Dolphin Line, Inc. "under the Commercial General Liability Policy issued by QBE to Dolphin Line relative to certain claims presented in *Smith*

*Bros. Truck Garage, Inc. d/b/a Smith International Truck Center v. Dolphin Line, Inc., et al*., pending in the North Carolina Cumberland County General Court of Justice Superior Court Division, bearing civil action number 09-CVS 2850." (Doc. 1, at 1)[1] Plaintiff asserts that subject-matter of this action is conferred pursuant to 28 U.S.C. § 1332 (Doc. 1, at ¶ 3 ("Jurisdiction of this action is proper pursuant to 28 U.S.C. § 1332, as (a) there is complete diversity of citizenship between QBE and the Respondent, and (b) the amount in controversy (exclusive of interest and costs) upon information and belief exceeds $75,000.00.")), and it seeks the following relief from this Court:

**WHEREFORE, THE ABOVE PREMISES CONSIDERED**, QBE prays that this Honorable Court:

A.     Declare and decree that the CGL Policy issued to Dolphin Line does not afford coverage to Dolphin Line for any claim arising from the automobile fire loss which occurred on or about May 14, 2008 at the Smith International North Carolina facility which housed a Dolphin Line automobile;

B.     Declare and decree that QBE does not owe Dolphin Line a duty to defend it in the Underlying Suit;

C.     Declare and decree that QBE does not owe

---

[1]     QBE filed its original complaint for declaratory judgment against Dolphin Line on October 28, 2008; it agreed to dismiss that complaint, without prejudice, on February 4, 2009, after Dolphin Line notified QBE that it had withdrawn its request for coverage for the incident forming the basis of the action. *See QBE Insurance Corp. v. Dolphine Line, Inc.*, CV 08-0629-WS-C, Docs. 1 & 15. Interestingly, Dolphin Line never sought to dismiss that complaint. *See* Docket Sheet.

2

Dolphin Line a duty to indemnify it for any settlement, judgment or other finding against it related to the allegations set forth in the Underlying Suit;

D.      Afford QBE such other and further relief as the Court may deem proper.

(*Id.* at 16)

2.      Dolphin Line was served with the complaint on April 20, 2009, making its answer due on May 11, 2009. (Doc. 5) When the defendant did not file a timely answer, QBE sought entry of default on May 27, 2009. (*See* Docs. 7 & 8) The Clerk of Court made entry of default on June 2, 2009. (Doc. 10)

3.      On June 15, 2009, the defendant filed a motion to set aside the default. (Doc. 13) This motion was granted by order dated June 17, 2009. (Doc. 14) Within the context of the order setting aside the Clerk's entry of default, the Court specifically ordered the defendant to file the motion to dismiss referenced in its motion to set aside entry of default "**on or before July 1, 2009**." (*Id.* (emphasis in original))

4.      On July 2, 2009, Dolphin Line filed the motion to dismiss presently before the undersigned for a ruling. (Doc. 15) Defendant contends that this Court lacks diversity jurisdiction over this matter because QBE has not established by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs. (*See id.* at 2-3)

3

4.     The Underlying Complaint arises from a fire that occurred at Smith International's facility on or about May 14, 2008.

5.     In Smith International's first cause of action, it alleges that Dolphin negligently caused or contributed to the fire. Smith International claims that its compensatory damages are in excess of $10,000. However, Smith International does not demand a specific amount of money from Dolphin.

6.     In Smith International's tenth cause of action, it claims that Dolphin's acts and omissions were grossly negligent, willful, wanton, and reckless. Smith International prays in excess of $10,000 in punitive damages. Again, however, Smith International does not demand a specific amount of money from Dolphin.

7.     On April 7, 2009, QBE filed its Complaint against Dolphin pursuant to 28 U.S.C. § 2201 . . .[,] seeking a declaration that QBE does not owe Dolphin a duty to defend the Underlying Complaint or indemnify Dolphin for a judgment or settlement arising from the underlying action.

8.     QBE alleged that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. QBE claims that there is complete diversity of citizenship and the amount in controversy exceeds $75,000, upon information and belief. In support of its claim that the amount in controversy exceeds $75,000, QBE relies exclusively on the Underlying Complaint which was attached as Exhibit A to the Complaint.

9.     QBE bears the burden of establishing by the preponderance of evidence that the amount in controversy exceeds $75,000. In a declaratory judgment action, the trial court should review the underlying action when analyzing the amount in controversy.

10.     The Underlying Complaint filed by Smith

> International seeks compensatory and punitive damages against Dolphin. However, the Underlying Complaint does not unambiguously state that the damages being sought against Dolphin exceed $75,000. Therefore, QBE has not satisfied its burden of establishing subject matter jurisdiction under 28 U.S.C. § 1332.

(*Id.* (internal citations omitted; emphasis in original))

5.     QBE filed its response to Dolphin Line's motion to dismiss on July 16, 2009. (Doc. 19) Therein, plaintiff urges this Court to deny the motion both because it was untimely filed (*id.* at 7-8) and also because it has proven by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum (*see id.* at 9-18). QBE has attached to its response two letters penned by counsel for Smith International Truck Center. (Doc. 19, Exhibits H & I) On August 26, 2008, counsel for Smith International penned a letter to William C. Walter at Dolphin Line, Inc., same reading in relevant part as follows:

> [W]e are [] confused both by Dolphin Line, Inc.'s demand, and the tone of your letters. As you surely know by now, the cause of the fire was the Dolphin Line, Inc. truck. The engineer retained by Dolphin Line, and its insurer The Travelers, Brian Kigar, was present at the inspection of the vehicle/fire scene, and saw, as did all of the other engineers and claims handlers, that the fire originated in the motor of the Dolphin Line truck, and was a result of the battery cable and ground cable rubbing together near the starter, a condition of which Dolphin Line was (or should have been) aware. That condition was the subject of the International recall (recall

number 05514) which apparently was ignored by Dolphin Line.

As you are no doubt additionally aware, Smith International Truck Center was <u>not</u> aware at the time of the fire of the recall relating to the cables near the starter, and did no work in that area of the truck. At the time of the fire Smith International was waiting for some parts relating to the transmission issues it was addressing for Dolphin Line.

To the extent Dolphin Line denies that it received the recall as outlined above, I should point out that the Dolphin Line truck starter was worked on by both Ward International Trucks (August, 2007) and Southwest International (February, 2008) at which time the recall should have been brought to the attention of those repair services, and ultimately to the attention of the Dolphin Line driver. You should also know that the recall was specifically to separate the battery cable and ground cable since the original design (without the separation) was a significant fire hazard.

To the extent that your letters of July 10 and August 20 are a formal demand for payment of damages to the Dolphin Line [t]ruck from Smith International Truck Center, that demand is specifically rejected.

As soon as Smith International Truck Center and Zurich, N.A. have compiled all of their damages information, ***I will be making demand upon Dolphin Line for the substantial damages caused by Dolphin Line's negligence***. So that Dolphin Line and The Travelers can be aware of the potential scope of the damages (Travelers should already be aware since its representative was also at the scene/inspection), ***Smith International Truck Center and Zurich, N.A. estimate their damages will be between $2 million and $3.5 million***.

(Doc. 19, Exhibit H (emphasis added; some emphasis in original); *see also*

Doc. 19, Exhibit I, October 6, 2008 Letter Penned by Richard L. Pinto,

Esquire, at 2 ("As set forth in my August 26 letter to Mr. Walter, Smith International Truck Center and its insurance carrier, Zurich, are in the process of gathering information and, in the case of Zurich, paying its obligated claim to Smith International. ***My understanding is that payments in excess of $1.5 Million have been paid to date, and ultimately payments somewhere between $2 million and $3.5 million will be made***."))

## CONCLUSIONS OF LAW

1.      Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1). "[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

> When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith.
>
> Generally, [i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. However, where jurisdiction is based on a claim for indeterminate damages, the *Red Cab Co.* legal certainty test

> gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum.

*Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (internal citations and quotation marks omitted); *see also Dairyland Ins. Co. v. Chadwick,* 2008 WL 912428, *2 (M.D. Fla. 2008) (same); *Clarendon America Ins. Co. v. Miami River Club, Inc.,* 417 F.Supp.2d 1309, 1315 (S.D. Fla. 2006) (same).

2.      Citing at some length from the Eleventh Circuit's decision in *Lowery v. Alabama Power Co.,* 483 F.3d 1184 (11th Cir. 2007), the United States District Court for the Northern District of Alabama indicated in *State Farm Fire & Cas. Co. v. Knoblett*, 561 F.Supp.2d 1256 (N.D. Ala. 2008) that a party seeking to invoke federal jurisdiction in a declaratory judgment action may satisfy its burden of proof by producing a document from the plaintiff in the underlying action which establishes the value of its federal lawsuit. *See id.* at 1258   ("In *Lowery*, the Eleventh Circuit held that when the amount in controversy is based on the value of a lawsuit, the party asserting federal jurisdiction must provide a document containing 'an unambiguous statement that clearly establishes federal jurisdiction.' The Court of Appeals further held that the document establishing the jurisdictional amount must originate 'from

the plaintiff [in the state action]–be it in the initial complaint or a later received paper . . . .' As noted previously, however, the complaint in the underlying state suit does not provide an unambiguous statement that clearly establishes the jurisdictional amount. Accordingly, the complaint in that suit does not establish a basis for subject matter jurisdiction in the instant case. To establish jurisdiction, then, State Farm must look to some other document from the plaintiff in the underlying action.").

3.      In the instant case, as in *Knoblett, supra*, the complaint in the underlying North Carolina state suit does not provide a clear statement which establishes the jurisdictional amount, in large–if not full–measure because the plaintiff in that underlying action, Smith International, in accordance with North Carolina's rules of pleading, could only demand damages, in its negligence and punitive damages counts against Dolphin Line, in excess of the jurisdictional amount of $10,000. *See* N.C. Gen. Stat. § 1A-1, Rule 8(2)(a) ("In all negligence actions, and in all claims for punitive damages in any civil action, wherein the matter in controversy exceeds the sum or value of ten thousand dollars ($10,000), the pleading shall not state the demand for monetary relief, but shall state that the relief demanded is for damages incurred or to be incurred in excess of ten thousand dollars ($10,000)."). Smith

International's adherence to North Carolina's pleading rules does not sound the death knell for the plaintiff in this case, however, since there are other documents from the plaintiff in the underlying action which clearly establish this Court's jurisdiction over this matter. In particular, on August 28, 2008, counsel for Smith International notified William C. Walter at Dolphin Line, Inc., by letter, that he would be making demand upon Dolphin Line "for the substantial damages caused by Dolphin Line's negligence[,]" which Smith International and its insurance carrier, Zurich, N.A., estimated would fall "between $2 million and $3.5 million." (Doc. 19, Exhibit H) More importantly, on October 6, 2008, Smith International's attorney penned a letter to a senior claims specialist for Lincoln General Insurance Company, one of Dolphin Line's insurance carriers, wherein he advised that Zurich had made payments to Smith International in excess of $1.5 million and it was anticipated that such payments would rise and ultimately fall "somewhere between $2 million and $3.5 million[.]" (Doc. 19, Exhibit I) These letters, of course, more fully define the monetary relief sought by Smith International against Dolphin Line in the underlying state action and sustain, in this case, QBE's burden of establishing by a preponderance of the evidence that the claim on which it is basing its jurisdiction exceeds $75,000, exclusive of

interest and costs. Accordingly, it is recommended that Dolphin Line's motion to dismiss (Doc. 15) be **DENIED**.[2]

## <u>CONCLUSION</u>

It is recommended that Dolphin Line, Inc.'s motion to dismiss QBE's complaint (Doc. 15) be **DENIED**.

**DONE** this the 11th day of August, 2009.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[2] QBE also contends that the motion to dismiss is due to be denied because it was untimely filed by Dolphin Line. While it is true that Dolphin Line missed Judge Granade's deadline for filing its motion to dismiss by one day (*compare* Doc. 15 (motion to dismiss filed July 2, 2009) *with* Doc. 14 (ordering Dolphin Line to file its motion to dismiss on or before July 1, 2009)), the undersigned does not recommend denial of the defendant's motion to dismiss on this alternative basis since this Court may question, at any time during the course of litigation, whether it has subject-matter jurisdiction.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.